**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERICA CHRISWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 00547 |
| v. | ) | |
| | ) | |
| VILLAGE OF OAK LAWN, et al., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The plaintiff, Erica Chriswell, brought this case against the Village of Oak Lawn, Oak Lawn police officers Brian Duffy and James O'Brien, and other unknown Oak Lawn police officers under 18 U.S.C. § 1983. The case arises from three encounters between Chriswell and Oak Lawn police officers that occurred between December 2009 and May 2011. She contends that the defendants violated her constitutional rights and should additionally be liable for related state claims. The defendants move to dismiss the case in its entirety; in addition to opposing their motion, Chriswell moves to add defendants. For the following reasons, the motion to dismiss is granted in part and denied in part, and the motion to add defendants is denied.

**BACKGROUND**

In evaluating this motion to dismiss, the Court is required to accept the complaint's factual allegations as true and draws all reasonable inferences in Chriswell's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012). Accordingly, the facts here are drawn from the third amended complaint, which describes the three encounters between Chriswell and Oak Lawn police officers that form the basis of the case.

The first encounter occurred on or around December 2, 2009, when Officer James O'Brien of the Oak Lawn police stopped Chriswell's vehicle. He did not radio in her driver's license or license plate numbers because he had called in the plate number prior to pulling her over. The two had a conversation: Officer O'Brien told Chriswell that she had to wear her seatbelt, to which she replied that she had been. After Chriswell gave Officer O'Brien her insurance card and a "ticket she was driving on," he returned to his vehicle, called her insurance company to verify coverage, and printed traffic citations. When O'Brien subsequently returned to Chriswell's vehicle, he stated that her license was suspended and instructed her to get out of the car. Chriswell denied the suspension and indicated that she had paperwork that would show that the suspension had been thrown out. O'Brien asked to see the paperwork, and Chriswell looked through her glove box as O'Brien returned to his vehicle. Approximately three minutes later, Chriswell found the paperwork and waived it out her car window while honking the horn to call Officer O'Brien back. He first ignored Chriswell, then returned to her car two minutes later.

At that point, the encounter turned physical. Chriswell had initiated a phone call to the "Elmhurst Prosecutors Office" so that Officer O'Brien could verify the paperwork, but O'Brien "snatched open [Chriswell's] car door," stood in her doorway, and told her to get off the phone. O'Brien then grabbed Chriswell, who was still strapped into her seatbelt. His foot against her car door for leverage, O'Brien knocked her phone out of her hand, pulled on her clothing and body, and attempted to throw her from the vehicle while she yelled for help. He then unsnapped his gun holster and went to draw his weapon. Chriswell, afraid for her life, drove away. O'Brien and others then arrested her and transported her to the Oak Lawn Police Department in handcuffs.

Once in the station lock-up area, an unknown officer slammed Chriswell into a concrete wall and patted her down forcefully. She pleaded with the officers, telling them that she is a

community member with a college degree and an insurance license, that she cares for her elderly grandmother and father, and that she would never have driven away from Officer O'Brien if he hadn't "attempted to kill [her]." Officer Brian Duffy responded, "You ain't no insurance agent. Black equals Crack." The other officers laughed. They took her to a cell, where she was strip searched in the presence of two officers, at least one of whom was, according to the complaint, a male officer. Over the course of the nineteen-hour encounter, Chriswell was never read her rights nor was she permitted to make a phone call.

Based on this encounter, Chriswell was charged with two counts of aggravated battery of a police officer, three counts of aggravated fleeing and attempting to elude a peace officer, and resisting or obstructing a police officer. On September 17, 2010, she pled guilty to aggravated battery of a police officer and aggravated fleeing and was sentenced to 24 months of probation with 240 hours of community service and fined $650.[1] A month later, Chriswell moved to withdraw her guilty plea, alleging ineffective assistance of counsel. *See People v. Chriswell*, No. 1-11-0135, 2012 WL 6955430, at *2 (Ill. App. Ct. March 1, 2012), *leave to appeal denied*, 968 N.E.2d 1068 (Ill. May 30, 2012) (Table). Chriswell amended her motion twice and the court continued the case four times while she considered whether to represent herself or retain counsel. Chriswell's motion was eventually dismissed with prejudice for want of prosecution when she failed to appear in court. The court denied her request to vacate the dismissal when she appeared several days later. *Id.* at *3. She appealed and lost, and the Illinois Supreme Court denied her

---

[1] As the defendants properly note, the Court may take judicial notice of documents in the public record, such as Chriswell's conviction and related public court documents. *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). And, the Court may properly consider such records in evaluating a motion to dismiss pursuant to Rule 12(b)(6). *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) (citations omitted); *Thayer v. Chiczewski*, No. 07 C 1290, 2007 WL 3447931, at *1 (N.D. Ill. Nov. 13, 2007) (taking judicial notice of state court records relating to a plaintiff's criminal arrest and conviction).

subsequent petition for leave to appeal. During the proceedings on the criminal charges against her, Chriswell alleges that the defendants bribed her attorney and suppressed evidence. She contends that the police and her attorney covered up, among other things, the existence of several dashboard camera videos that would corroborate her account of the incident. Just as she previously argued before the state appellate court, Chriswell now contends that for all of these reasons, her plea was involuntary.

Chriswell's second encounter with the Oak Lawn police occurred between September 17, 2010, and January 12, 2011. An unknown Oak Lawn police officer pulled Chriswell over, she alleges, because of the color of her skin. The officer let her go after running her license and checking to see if she had insurance. Finally, the third encounter occurred on May 24, 2011, when an unknown Oak Lawn police officer pulled Chriswell over while she was ordering coffee in a Dunkin Donuts drive-thru. The officer, who is also alleged to have pulled Chriswell over because of the color of her skin, falsely claimed he saw her commit a traffic offense and gave her a speeding ticket. Exhausted from being targeted, she paid the ticket. Chriswell explains that the racial discrimination shown collectively in these incidents is "customary" and "due to poor training and supervision" by the Village of Oak Lawn. The complaint excerpts quotations that people have left on an online petition that demands an end to racial profiling in Oak Lawn.

On January 25, 2011, Chriswell filed this suit in federal court seeking damages for the civil rights violations that she alleges occurred in the first two of these encounters. After being permitted to proceed *in forma pauperis*, she amended her initial complaint to include, at first, the names of individual Oak Lawn police officers and, later, the Village of Oak Lawn. Dkts. 1, 6, 12, 13, 15. In October 2011, the Court on its own motion appointed counsel to represent Chriswell and gave her leave to file a third amended complaint. Dkt. 30. After the Court granted motions

for relief from appointment by the first and second appointed attorneys, a third was appointed. Dkts. 33, 54. Chriswell, however, promptly directed this attorney to file a motion to withdraw, and requested counsel skilled in civil rights and constitutional matters. Dkts. 55, 59–61. After cautioning Chriswell that further counsel would not be appointed, she persisted in her motion. The Court therefore granted the motion to withdraw but declined to appoint further counsel. Dkt. 61. Thereafter, Chriswell filed the third amended complaint *pro se* on November 6, 2012. Dkt. 68. In it, she includes eleven counts, for unreasonable seizure (Counts I, I(A), and I(B)), excessive force (Count II), an illegal strip search (Count III), due process violations (Counts IV, IV(A), and IV(B)), malicious prosecution (Count V), bribery (Count VI), and racial profiling (Count VII). She seeks $1.5 million for her injuries, which include humiliation and defamation, a loss of current and future income, and mental and emotional suffering.

The defendants now move to dismiss the third amended complaint in its entirety. Dkt. 76. In her response to the defendants' motion, Chriswell includes additional factual assertions that she requests be incorporated into the third amended complaint; she also moves to add additional defendants. Dkts. 80, 82.

## DISCUSSION

The plaintiff, Erica Chriswell, endeavors to mount many claims against the Village of Oak Lawn, Officers Brian Duffy and James O'Brien, and others. For the following reasons, three survive this motion to dismiss: those for unreasonable seizure and excessive force against Officer O'Brien and a state law indemnification claim against the Village of Oak Lawn.

### I. Chriswell's Request to Incorporate Material into the Third Amended Complaint

In view of the contents of Chriswell's response brief, it is necessary to first define the scope of the Court's consideration. In addition to her response to the substance of the defendants'

motion, Chriswell includes seventeen pages of factual assertions that she hopes will clarify the third amended complaint in the face of the defendants' criticism that it is confusing. Pl.'s Mot. Opp. 1–17, Dkt. 82. Some of the assertions in this passage somewhat mirror those in the third amended complaint, but others are new. Chriswell requests "that this document may be made a part of the Third Amendment [sic] complaint." Pl.'s Mot. Opp. 1, Dkt. 82.

"A plaintiff need not put all of the essential facts in the complaint," *Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir. 1992)), and "may supplement the complaint with factual narration in an affidavit or brief," *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). The Seventh Circuit recently noted that a plaintiff who is opposing a Rule 12(b)(6) or Rule 12(c) motion and who is able to provide "illustration" of the facts that the plaintiff expects to be able to prove "may find it prudent to do so." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citations omitted). Even so, "it is axiomatic that a plaintiff may not amend [her] complaint in [her] response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (citing *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007)); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Although the documents filed by *pro se* litigants are to be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), *pro se* litigants are not exempt from procedural rules, *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Since she filed her original complaint in 2011, the Court has given Chriswell numerous opportunities to amend her complaint, including a period of nearly eleven months in 2012 during which it granted her multiple extensions to file the third amended complaint. In line with

*Geinosky*, some of the facts in the passage that Chriswell now seeks to incorporate are consistent with and elaborate on her original claims. Most of the assertions relate to the alleged cover-up of evidence in her criminal case; even if they were added to the complaint, these would not change the outcome of the relevant claims, as discussed below. The passage also goes beyond "factual narration" to include four new counts. The content of the first three counts largely echoes that of the third amended complaint, attacking the validity of Chriswell's criminal conviction by way of due process, conspiracy, and equal protection claims. The last new count, for indemnification against the Village of Oak Park, is the only materially new addition. The Illinois Tort Immunity Act directs municipalities to pay tort judgments and settlements for municipal employees who are liable while acting within the scope of their employment. 745 Ill. Comp. Stat. 10/9-102. Indemnification claims routinely accompany the type of § 1983 claims that survive this motion to dismiss. *See, e.g.*, *Turner v. City of Chicago*, 12 C 9994, 2013 WL 4052607, at *7 (N.D. Ill. Aug. 12, 2013) (discussing the applicability of the Illinois Tort Immunity Act to § 1983 claims); *Manning v. Sweitzer*, 891 F. Supp. 2d 961, 970 (N.D. Ill. 2012) (allowing indemnification claim to proceed on § 1983 claim). Chriswell's request to revise the third amended complaint will therefore be granted only as to the indemnification claim. She may seek indemnification from the Village of Oak Lawn if Officer O'Brien is found liable for conduct that falls within the scope of the Tort Immunity Act.

## II. Defendants' Motion to Dismiss

The defendants move to dismiss the third amended complaint in its entirety, citing Rules 12(b)(6) and 12(c). They argue that Chriswell's claims are variously barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), fail to state a claim for which relief can be granted, and are barred by the statute of limitations. Additionally, the defendants assert that the Court should

dismiss the complaint because it impermissibly follows a "shotgun pleading" style, where each count incorporates every preceding paragraph of the document.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). "A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These factual allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with "enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). While factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Iqbal*, 556 U.S. at 678–79.

Rule 12(c) allows a party to request judgment on the pleadings, instead of dismissal. "A plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings under Rule 12(c)." *Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012). The standard and effect of 12(b)(6) and 12(c) motions are the same, and opinions "often use the two interchangeably." *Id.*; *see also Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

8

Because Chriswell is *pro se*, the Court reads her filings liberally. *See Pardus*, 551 U.S. at 94. "[T]he pleading standards for *pro se* plaintiffs are considerably relaxed." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013). "[E]ven in the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)," courts are to hold *pro se* complaints "to a less stringent standard than formal pleadings drafted by lawyers." *Id.* (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)).

### A. Rule 10(b) and "Shotgun Pleading"

The defendants argue that the entire complaint should be dismissed because it is impermissibly written in a "shotgun pleading" style that makes the document difficult to parse. The phrase "shotgun pleading" refers to complaints in which litigants use excessive incorporation, taking advantage of Rule 10(b). Rule 10(b) allows a party to "refer by number to a paragraph in an earlier pleading." The defendants quote *CustomGuide v. CareerBuilder, LLC*, which condemns excessive incorporation: "Courts have discouraged this type of 'shotgun' pleading where each count incorporate[s] by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or cause of action, appearing in a count's heading. Such pleadings make it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (citation and internal quotation marks omitted). Indeed, the result is often "an unnecessarily long and confusing pleading and counts that contain irrelevant facts or defenses," and at times "it can prevent the opposing party from reasonably being able to prepare a response or simply make the burden of doing so more difficult." 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1326 (3d. ed.).

Chriswell's third amended complaint consists of 134 paragraphs. Each count incorporates all of the previous paragraphs of the document, including those of previous counts and those that allege facts relating to defendants not referred to in the heading of a given count. This is a classic example of shotgun pleading that is difficult to parse. One solution employed by courts is to order a plaintiff to replead and state her claims more clearly. While the Court agrees with the defendants that the third amended complaint is confusing, there is enough clarity to determine that Chriswell seeks to hold (1) Officer O'Brien liable for unreasonable seizure, excessive force, malicious prosecution, bribery, racial profiling, and due process violations; (2) Officer Duffy liable for excessive force, malicious prosecution, bribery, racial profiling, and due process violations; (3) an unknown booking officer liable for excessive force; (4) an unknown officer liable for an illegal strip search; (5) two unknown police officers liable for unreasonable seizure and due process violations; (6) the Village of Oak Lawn liable for malicious prosecution, bribery, and racial profiling; and (7) other unknown officers liable for racial profiling. Similarly, the facts as alleged in the introductory part of the complaint are clearly stated so that the Court is able to associate them with their corresponding counts. In the interest of judicial economy, and in light of Chriswell's *pro se* status, the Court will decide the motion to dismiss on the basis of whether she has adequately stated valid claims, rather than requiring her to replead her claims yet again.

### B.  The Applicability of the *Heck* Bar to Counts I, I(B), IV, IV(B), V, and VI

The defendants argue that several of Chriswell's claims are barred by the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* reflects the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck*, 512 U.S. at 484 (citation omitted). It requires that before a § 1983 plaintiff

may recover damages for an alleged harm "caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must first prove that the conviction or sentence has been reversed, expunged, or called into question by the grant of a petition for habeas corpus. *Heck*, 512 U.S. at 486–87. "[T]he *Heck* rule underscores the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006) (quotation marks and citation omitted).

To properly apply the *Heck* bar, a court must assess "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. If the plaintiff's claims, when successful, would not demonstrate the invalidity of any outstanding criminal judgment, they may proceed. For the *Heck* bar to apply, there needs to be "a clear nexus between the plaintiff's conviction and the alleged wrongful government action." *VanGilder*, 435 F.3d at 691–92. The Supreme Court has since underscored that a close relationship is essential: "[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (citing *Heck*, 512 U.S. at 487 n.7). The defendants argue that several of Chriswell's claims would necessarily imply the invalidity of two convictions: (1) her conviction for aggravated battery of a police officer and (2) the May 24, 2011, traffic citation for which she paid the ticket. On this theory, they seek to dismiss Chriswell's unreasonable seizure (Count I), due process (Count IV), and malicious prosecution (Count V) claims related to the encounter on December 2, 2009, as well as the unreasonable seizure (Count I(B)) and due process (Count IV(B)) claims related to the encounter on May 24, 2011.

Whether these claims are barred by *Heck* hinges on whether judgment in her favor here would necessarily imply the invalidity of existing judgments. For the claims related to the May

24, 2011, encounter, the answer is yes. In Illinois, traffic tickets "may be satisfied without a court appearance by a written plea of guilty . . . and payment of fines." Ill. Sup. Ct. R. 529(a). Chriswell admits that she "paid the ticket" that she received, indicating that she plead guilty, and the traffic offense is therefore not subject to collateral attack. *See Poole v. City of Burbank*, 632 F. Supp. 2d 847, 850–51 (N.D. Ill. 2009). Chriswell has not demonstrated that the ticket has since been invalidated, and failed even to respond to the defendants' argument concerning this ticket in her reply brief. Failure to respond to an argument results in that party waiving their opposition to it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Counts I(B) and IV(B) are therefore dismissed.

Chriswell's due process and malicious prosecution claims arising from the criminal proceedings that followed from the encounter on December 2, 2009, are similarly barred. Chriswell asserts that the defendant officers and village are liable for malicious prosecution for initiating false criminal proceedings against her. To state a claim for malicious prosecution under Illinois law, "the plaintiff must allege that: (1) the defendant commenced or continued an original criminal or civil proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) the defendant instituted the proceeding without probable cause; (4) the defendant acted maliciously in initiating or continuing the proceeding; and (5) the plaintiff was injured." *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) (citations omitted); *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996). Chriswell's malicious prosecution claim, if successful, would necessarily entail a conclusion that the proceedings against her were not supported by probable cause—a conclusion in direct conflict with her guilty plea and conviction. The malicious prosecution claim thus runs headlong into the *Heck* bar and fails. Moreover, Chriswell has not alleged that the proceedings terminated in her favor, therefore she

12

also fails to state a claim for malicious prosecution in any event. While a simple failure to allege favorable termination might be curable by amendment, Chriswell cannot overcome *Heck* in view of her standing conviction, therefore the malicious prosecution claim in Count V is dismissed.

Chriswell's due process claim in Count IV warrants the same result. Chriswell alleges that the defendants violated her due process rights by submitting false reports, suppressing evidence, and bribing her attorney during the criminal proceedings against her. A successful challenge to the legitimacy of the procedures used in her criminal proceedings would imply that her resulting conviction is invalid. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001) (finding that *Heck* applied to a due process claim based on an alleged *Brady* violation); *see also Brooks v. City Chicago*, 564 F.3d 830, 832 (7th Cir. 2009) (affirming dismissal of a due process claim based on false arrest and failure to disclose exculpatory evidence, perjury, and false charges in the criminal complaint); *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) (prohibiting pursuit of "what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment"). Chriswell cannot demonstrate that her conviction resulting from those criminal proceedings has been invalidated. Therefore, her due process claim is also barred by *Heck*.

*Heck* also bars one of two unreasonable seizure (or false arrest) claims arising from the same date, though the analysis is not quite as straightforward. "Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit." *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) (citing *Wallace v. Kato*, 549 U.S. 384 (2007)). It is not entirely clear which act or acts Chriswell intended to encompass in her Fourth Amendment claim against O'Brien. Taking her allegations

13

as true, she stopped her car twice on December 2, 2009: the first traffic stop, after which Officer

O'Brien grabbed her and drew his weapon, and the second stop, after which she was handcuffed

and brought to the police station after having fled the altercation with O'Brien.

As to the first, a police officer who sees a person commit "even a minor violation of a

traffic law" is entitled under the Fourth Amendment to stop that person's vehicle. *United States*

*v. Smith*, 668 F.3d 427, 430 (7th Cir.), *cert. denied*, 132 S. Ct. 2409 (2012). The defendants do

not address the circumstances of this first stop in their briefs, and it is not clear what grounds

they believe that Officer O'Brien had to stop Chriswell. According to Chriswell, O'Brien called

in her license plate number prior to pulling her over, an act that she argues is "characteristic of

racial profiling." Third Am. Compl., ¶¶ 19–22. During the traffic stop, in response to O'Brien's

admonishment to wear a seatbelt, Chriswell replied, "I had my seatbelt on." *Id.* ¶¶ 12–13.

Chriswell also indicates that O'Brien issued tickets as he thought appropriate—the state court

record indicates these were citations for failure to wear a seatbelt and reckless driving, among

other things. *People v. Chriswell*, 2012 WL 6955430, at *1. Chriswell's assertion that "there was

no legal cause" to stop her borders on conclusory, but it is a plausible inference from the facts

she alleges (assuming they are true) that she had not committed any violation at the time Officer

O'Brien pulled her over. While the defendants may eventually be able to prove that Chriswell

pled guilty to and paid her ticket for her failure to wear a seatbelt or another violation that would

trigger the *Heck* bar, they have not at this point identified any such evidence that the Court can

presently consider. Unless and until they do, this claim involves a fact dispute and credibility

determination that cannot be made on a motion pursuant to Rule 12(b). Count I, insofar as it

alleges an unreasonable seizure claim against Officer O'Brien for this initial traffic stop,

therefore survives this motion to dismiss.

14

The defendants focus on the second stop and Chriswell's arrest for, among other things, aggravated battery of a police officer, to which she later pled guilty. An officer may arrest a person if the officer has probable cause to believe that the person committed any criminal offense in his presence. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In theory, probable cause and the validity of a conviction are distinct: where probable cause does not exist at arrest, sufficient evidence may still eventually support a conviction. Here, the defendants argue that probable cause and the evidence that supports conviction are one and the same, thus the Fourth Amendment claim is a collateral attack on her conviction that would violate the *Heck* bar. Because Chriswell's criminal acts took place in front of her arresting officer, they argue that "proof of the crime is *ipso facto* proof of probable cause." *Lang v. City of Round Lake Park*, 87 F. Supp. 2d 836, 843 (N.D. Ill. 2000) (quoting *Patterson v. Leyden*, 947 F. Supp. 1211, 1217 (N.D. Ill. 1996)). They cite *Currier v. Baldridge*, in which the Seventh Circuit held that a plaintiff's disorderly conduct conviction precluded a § 1983 claim for false arrest. 914 F.2d 993, 996 (7th Cir.1990). The court inferred that the arresting officer's testimony supported both probable cause and the conviction from the nature of the charge and the fact that the disorderly conduct took place in the presence of the arresting officer. *See also Puch v. Vill. of Glenwood, Ill.*, 05 C 1114, 2012 WL 2502688, *4 (N.D. Ill. June 27, 2012); *Lang*, 87 F. Supp. 2d at 843; *Patterson*, 947 F. Supp. at 1217. Chriswell was likewise convicted based on actions that she took in O'Brien's presence. O'Brien's testimony necessarily provides proof of both probable cause and Chriswell's guilt. Moreover, Chriswell plead guilty to the very behavior that would have constituted probable cause for her arrest. If she were now allowed to attack probable cause, her conviction would be undermined in violation of *Heck*. Her Fourth Amendment claim based on the second stop and arrest, Count I(A), is accordingly barred.

In Count VI, denominated "Bribery," Chriswell alleges that O'Brien, Duffy, the Village of Oak Lawn, and her criminal defense attorney conspired during her criminal proceedings to suppress evidence and file invalid documents. Third Am. Compl. ¶ 114, Dkt. 68. Although it is not clear what claim Chriswell attempts to mount in Count VI (a fact that explains why the defendants do not argue the *Heck* bar specifically with regard to this count)—perhaps a different version of the same § 1983 due process claim rejected above or a claim of a conspiracy to interfere with civil rights under 42 U.S.C. § 1985—it is clear that it goes to the validity of her conviction and is thus barred by *Heck*. Finally, were the Court to consider the first three counts that Chriswell seeks to now incorporate into the third amended complaint, *see* Pl.'s Mot. 10–16, Dkt. 82, they too would fail because they similarly attack the alleged cover-up that Chriswell believes undermines the validity of her guilty plea and resulting state conviction.

### C. Chriswell's Excessive Force Claims Against O'Brien and Duffy (Count II)

In her claim against O'Brien for excessive force, Chriswell does not collaterally attack her conviction. Rather, she claims that Officer O'Brien initiated a physical altercation in which his behavior exceeded what is allowed under the law governing excessive use of force. The Supreme Court has held that a "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure'" is to be analyzed under "the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). *Accord Brosseau v. Haugen*, 543 U.S. 194, 197 (2004); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). An excessive force inquiry begins with an inquiry into whether a "seizure" took place. *See Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)); *United States v. Bradley*, 196 F.3d 762, 767 (7th Cir. 1999). If a seizure occurred, the next question is whether it was unreasonable. *Carlson*,

16

621 F.3d at 618; *Bradley*, 196 F.3d at 767. Reasonableness is measured from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396.

Taking the facts alleged in the complaint as true, the physical altercation between Chriswell and O'Brien began after Chriswell was pulled over and they had disagreed over whether her license was suspended. When O'Brien returned to her vehicle after going to his own and discovered her on the phone, he "snatched open" her car door and made physical contact with her by "snatching her back and forth in an attempt to drag her from the vehicle." Third Am. Compl. ¶¶ 35–36, 40. While Chriswell's seatbelt kept her in the car, O'Brien "knocked her phone out of her hand" and "pulled on her clothing, her person, and her private parts." *Id.* ¶¶ 37–38, 41. Chriswell then "pulled her car away from O'Brien to prevent being shot and/or killed," after which she was stopped again, arrested, and taken into custody. *Id.* ¶¶ 44–45.

The defendants argue that because Chriswell was able to flee from the altercation with O'Brien, he did not actually "seize" her and therefore no claim for excessive force may lie against him. For a seizure to have occurred, a governmental officer must intentionally terminate or restrain a person's freedom of movement by means of physical force or a show of authority. *See Brendlin v. California*, 551 U.S. 249, 254 (2007); *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989). This determination can be challenging in the context of a suspect who attempts to evade the police. "It is . . . difficult to ascertain the precise moment a seizure occurs when law enforcement officers are pursuing an individual who is evading capture by driving or running away from police after a display of authority." *Bradley*, 196 F.3d at 768. But here, it is clear that

17

O'Brien had already seized Chriswell; he had directed her, by means of his flashing lights, to pull her car over and she had acquiesced in that direction; that is a seizure. *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) (police officer's show of authority becomes a seizure when the person to whom it is directed submits to that authority); *Phelan v. Village of Lyons*, 531 F.3d 484, 488 (7th Cir. 2008). Chriswell alleges that, during this seizure, O'Brien used excessive force by grabbing her, throwing her back and forth inside her car, and drawing his weapon. According to Chriswell, she then fled out of fear, not because she thought she was free to leave or because O'Brien's actions had been insufficient to restrain her. Read liberally, as is required, the complaint plausibly alleges that a seizure occurred and that O'Brien used excessive force against Chriswell in the course of that seizure. As such, Chriswell's excessive force claim against Officer O'Brien in Count II therefore survives this motion.

In her claim against Duffy for excessive force, however, Chriswell fails. The Seventh Circuit has noted that in its "authoritative discussion of excessive force," the Supreme Court "repeatedly says or assumes that there cannot be excessive force without *some* force." *McNair v. Coffey*, 279 F.3d 463, 467 (7th Cir. 2002) (citing *Graham*, 490 U.S. at 391, 392, 394). Duffy's statement that "black equals crack" was (if made) disgraceful and reprehensible, but it does not amount to an unreasonable use of force. *See, e.g.*, *Mannix v. Humer*, 10 C 5063, 2011 WL 116888, at *3 (N.D. Ill. Jan. 11, 2011) (dismissing an excessive force claim where officers allegedly spoke harshly to the plaintiff); *Cuautle v. Tone*, 851 F. Supp. 1236, 1241 (N.D. Ill. 1994) ("Verbal abuse does not rise to the level of a constitutional violation and cannot be a basis for a suit brought under 42 U.S.C. § 1983." (citing *Patton v. Przybylski*, 822 F.2d 697 (7th Cir.

1987); *Moore v. Marketplace Restaurant*, 754 F.2d 1336 (7th Cir. 1985))). The excessive force

claim against Duffy in Count II is accordingly dismissed.[2]

### D. Chriswell's Claims Against Unknown Officers (Counts I(A), II, III, and IV(A)) and Chriswell's Motion to Add Defendants

Chriswell's excessive force claim against the unnamed booking officer that slammed her

against a concrete wall following her arrest on December 2, 2009 fails for another reason: it is

untimely. While a statute of limitations defense is not normally a part of a Rule 12(b)(6) motion

to dismiss, when the plaintiff's allegations reveal that her claim is barred by a relevant statute of

limitations, the complaint may be dismissed for failure to state a claim. *Logan v. Wilkins*, 644

F.3d 577, 582 (7th Cir. 2011) (citations omitted). While § 1983 provides a federal cause of

action, courts look to the laws of the state in which an injury occurred to determine the length of

the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Kelly v. City of

Chi.*, 4 F.3d 509, 511 (7th Cir. 1993). Illinois has a two-year statute of limitations for personal

injury claims. 735 Ill. Comp. Stat. 5/13–202. To survive this two-year statute of limitations, §

1983 claims arising in Illinois must therefore be brought within two years of accrual. *Kelly*, 4

F.3d at 511. "A § 1983 action accrues 'when the plaintiff knows or should know that his or her

constitutional rights have been violated.'" *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004)

(quoting *Kelly*, 4 F.3d at 511).

This excessive force claim accrued when Chriswell was slammed into the wall on

December 2, 2009. The viability of the claim thus hinges on whether it was brought within two

---

[2] This is not to say that his racially derogatory language is devoid of legal significance. As the Seventh Circuit has pointed out, "[s]uch language is strong evidence of racial animus, an essential element of any equal protection claim." *DeWalt v. Carter*, 224 F.3d 607, 612 n.3 (7th Cir. 2000) (citations omitted). The Court will consider this statement as appropriate in the context of Chriswell's equal protection claim.

years. Chriswell filed her initial complaint against the Village of Oak Lawn and its police department on January 25, 2011, within the two year statute but she did not identify the offending officer. Compl., Dkt. 1. Her third amended complaint, filed on November 6, 2012, did not identify the officer either, Third Am. Compl., Dkt. 68, and her motion for leave to add additional defendants seeks only to name him as a John Doe. Thus, any amendment to add this defendant by name would come, if ever, at some indeterminate time in the future that is far beyond the two years following accrual of the claim. For this claim to escape being dismissed as time-barred, an amendment including the name of the unknown officer would therefore need to relate back to the date of her original complaint under Rule 15(c)(1) or the Court would need to equitably toll the statute of limitations.

An amendment that seeks to add or change parties relates back when it asserts a claim "that arose out of the same conduct, transaction, or occurrence" described in the original pleading and "when the party to be brought in by amendment" received notice such that "it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). Chriswell does not argue that she made a mistake in identifying the property party, nor does she offer that the correct party has received notice to satisfy Rule 15(c)(1)(C). Furthermore, her use of the label "unknown" demonstrates that she has not made a mistake, but that she lacks knowledge of the defendant's identity. *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) ("A plaintiff's ignorance or misunderstanding about who is liable for his injury is not a 'mistake' as to the defendant's 'identity.'"); *King v. One Unknown Federal Correctional Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (naming unknown defendants does not satisfy requirements for relation back); *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir.

1997) (noting that anonymous placeholders do not open the door to relation back). Relation back would therefore be inappropriate.

Chriswell instead argues that the Court should equitably toll the statute of limitations. Although the accrual of a claim in a § 1983 case is governed by federal law, the tolling analysis is governed by state law. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *Shropshear v. Corp. Counsel of the City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001). Equitable tolling permits a plaintiff to file suit after the statute of limitations has run "if despite the exercise of all due diligence [the plaintiff] is unable to obtain vital information bearing on the existence of his claim." *Shropshear*, 275 F.3d at 595. The Seventh Circuit has approved of the use of the doctrine when a plaintiff was injured, knew of the injury, yet was "unable despite all reasonable diligence to learn . . . the wrongdoer's identity." *Donald v. Cook Cnty. Sheriff's Dept.*, 95 F.3d 548, 562 (7th Cir. 1996) (quotation marks and citation omitted) (reversing the dismissal of a *pro se* prisoner's § 1983 suit because the trial judge failed to assist the prisoner). In *Donald*, the Seventh Circuit sided with a *pro se* plaintiff who, unable to conduct a pre-complaint investigation because of his incarceration, had originally made the mistake of naming the Sheriff's department instead of an individual defendant. *Id.* at 561.

*Donald*, however, does not stand for the proposition that *pro se* plaintiffs have an unlimited amount of time to add defendants outside the bounds of the statute of limitations. *Cf. Tate v. McCann*, 08-CV-5664, 2010 WL 2557744, *7–8 (N.D. Ill. June 21, 2010) (rejecting the argument that a *pro se* prisoner's status alone justifies the application of the equitable tolling doctrine in light of the prisoner's lack of diligence). Moreover, the circumstances of this case do not warrant *Donald*'s expansive approach. *See Hall*, 469 F.3d at 597 (collecting cases and discussing the Seventh Circuit's trend toward a narrower approach). Chriswell's situation is

21

distinguishable in several respects. While Chriswell initially pursued the Village instead of individual officers, the Court informed her as early as February 11, 2011, that she needed to direct her claims "against the individual officers involved in the incident." Dkt. 5. In her first amendment, she included two such names, O'Brien and Duffy. Dkt. 10. She later explicitly acknowledged that she understood that their names had been substituted as defendants. Dkt. 8. She does not explain what diligence she then showed in pursuing the names of additional officers. Nor was Chriswell as burdened as the prisoner plaintiff in *Donald*: on three occasions, the Court previously appointed counsel that could have assisted with this endeavor. She rejected the last appointed counsel despite a looming deadline to amend her complaint, and she sought and received multiple extensions to file that amended complaint. The justification for not naming the defendant that Chriswell offers in her response to the defendants' motion to dismiss is that the defendants hid evidence from her and conspired with her attorney to work against her interests. Reading the complaint as a whole, it appears that the hidden evidence to which she refers is video of the incident, not the officer's identity, and in any event, even if true, those allegations would not explain her failure to pursue discovery of the officer's identity in this case. In short, Chriswell's current *pro se* status alone does not justify equitable tolling of the statute of limitations, and she offers no explanation of what actions she took to exercise reasonable diligence to discover the officer's identity. The excessive force claim against the unknown officer in Count II is therefore dismissed.

Count III, based on Chriswell's strip search that same day, meets a similar fate even though she now seeks to add one defendant's name. On January 14, 2013, when she responded to the defendants' motion to dismiss, Chriswell also requested that the Court give her leave to add defendants. Pl.'s Mot., Dkt. 80. She wants to add John Strama as a defendant, alleging that he

was the male officer present during the strip search. She also requests that the female officer present during her strip search be called "Jane Doe." In evaluating her request, the Court is mindful that district courts have a "special responsibility" to "allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Donald*, 95 F.3d at 555 (7th Cir. 1996). But, as with the excessive force claim, dismissal is appropriate here because Chriswell failed to determine the identity of the defendants before the statute of limitations ran out in December 2011. *See Hall*, 496 F.3d at 596. Chriswell's motion provides no explanation for why she was unable to identify Strama, or what steps she took to do so. Nor does she offer any basis to infer that Strama was on notice of a claim implicating his conduct in this law suit. Chriswell's motion to add defendants is therefore denied, and Count III is accordingly dismissed.

In Counts I(A) and IV(A), Chriswell attempts to assert unreasonable seizure and due process claims against an unidentified Oak Lawn police officer based on a traffic stop that she alleges occurred on an unspecified day between September 17, 2010 and January 17, 2011. At the latest, a claim related to this encounter would have accrued on January 17, 2011, giving Chriswell until January 17, 2013 to name the defendant. As with the claims above, Chriswell has shown neither the diligence required to toll the statute nor that it would be appropriate to relate back any later-named defendants. Counts I(A) and IV(A) are therefore dismissed.

### E.  Chriswell's Equal Protection Claim (Count VII)

Finally, Chriswell links the three encounters together in Count VII, which she labels as a "state supplemental claim of racial profiling." Setting its label aside, racial profiling allegations like these are treated as equal protection violation claims. *Chavez v. Illinois State Police*, 251 F.3d 612, 620 (7th Cir. 2001). Courts have begun to address the implications of such racial

profiling. *Chavez*, 251 F.3d at 635 (collecting cases). The Supreme Court has given an example not far removed from this case: "[A]n allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 604 (2008). Even with this in mind, pleadings must make adequate allegations under the law to withstand a motion to dismiss. Here, Chriswell fails to allege enough.

To state a claim for an equal protection violation, a plaintiff must allege that the challenged actions had a discriminatory effect and were motivated by a discriminatory purpose. *Chavez*, 251 F.3d at 635–36. To show discriminatory effect, plaintiffs must show "that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that [they] were treated differently from members of the unprotected class." *Id.* at 635 (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir.), *cert. denied*, 531 U.S. 1012 (2000)). Although Chriswell's allegation that "the color of her skin prompted [the defendants] to pull her over" mark her claim as one for racial profiling, it is conclusory; she fails to allege facts that would plausibly support that inference. She does not name similarly situated individuals of other races who were not stopped by Oak Lawn police under similar conditions or offer any statistical evidence that would permit a plausible inference of discriminatory effect. She relies instead on a small number of selective quotations from a website criticizing Oak Lawn for racial profiling problem; this anecdotal evidence, of unassessable reliability, cannot be reasonably construed as a demonstration of such an effect. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (rejecting proffered anecdotal accounts of discrimination as insufficient to raise an inference that other decisions were discriminatory). While Officer Duffy's racially derogatory comments might be relevant to an assessment of discriminatory purpose,

24

Chriswell's failure to adequately allege discriminatory effect or impact is fatal to her Equal Protection claim, and Count VII is therefore dismissed.

*    *    *

For the reasons set forth above, the motion to dismiss is granted in part and denied in part, and the motion to add defendants is denied.

Entered: November 4, 2013

John J. Tharp, Jr.
United States District Judge